The Case.
Francis Lightfoot the Pits. Father was possessed of a great Estate, in Lands, Neg’rs, Goods & Chattels, and had agreed with Perry for the purchase of a Tract of Land upon Nottoway River, and made his Will Whereby among the other Legacies he gives the Deft, a Negro, he giving another in lieu of him to his Heirs, and to his Daughter 1000^. Sterling to be placed out at Interest till she shou’d be of age or be Married, and disposes of the residue of his Estate in these words “ All the Re- “ mainder of my Estate both Real and Personal wheresoever “ lying or being I give and Bequeath to my dearly beloved Son “ Francis Lightfoot and the Heirs Males of his Body lawfully “ begotten, But in Case my s’d Son dies with’t such Male Issue “ or there be any failure thereafter in the Male line, then I give “ all my Estate Real and Personal to my well beloved Brother “ Philip Lightfoot (the Deft.) and his Heirs forever he or they “ paying to the Daughters of my s’d Son, or in Case there be “ none such, to my Daughter Elizabeth 2500;£. Current money “ money of Virginia in full Compensation of the same.” And appoints this Brother the Deft, and Mr. Benjamin Harrison his Ex’ors. & dies leaving only two Children the Son and Daughter mentioned in the Will. The Ex’ors. proved the Will & took upon them the Exec’on of it Mr. Perrys Attorney requires them to perform the Agreement for the purchase of the Nottoway Land, They agree to do it & Submit the Settling of the Conveyance, so as the Land might pass According to the Will to him as their Council, And the Land was Conveyed accordingly to the Deft, in fee. He declaring at the time of Executing the Deeds that he had it in Trust for his Nephew and the Heirs Male of his Body and the Purchase money was paid out of the Testor’s. Estate
The Circumstances of the Estate were such, that there was not Ready money sufficient to place out the 1000^. Legacy to the Daughter . The Son in May 1730 about 2 Years and five Months after the death [193] of the Father dies in his Childhood The Deft, then ent’d upon the Estate in his own Right Claiming both the Real and Personal by his Brothers Will But before the Sons death Such part of the Personal Estate as might be the *R85 worse for keeping was sold by the Deft, and the other Exor. and what was useful to the Heirs Estate was preserved in Specie, and at the time of the Sons death neither the Ballance of the Personal Estate which had been sold, nor the Profits were sufficient to pay the 1000^. Legacy But the Deft, being then chargeable with it consulted the other Exor. who was likewise joint Guardian with him of the Pit. about placing out the 1000^". at Interest, And writ to his Merchant in London to Inform him in what fund it might be put with the best Security and most to the Pits. Advantage But Mr. Harrison wou’d determine nothing positively about it, only desired the Deft, himself to keep it at Interest which he Always refused
The Bill requires the Deft, to Account for the Personal Estate and the Profits of the Lands and Negroes, to Convey the Nottoway Land to the Pit. to place out the 1000;£. and 2500^. at Interest for her Benefit and to deliver her a Negro in lieu of the Negro given to the Deft.
These are the material Demands of the Bill, There are other Things likewise demanded, which appear by the Defts. Answer to be without Grounds
The Deft, submits to the Decree of the Court as to the placing out these two Sums of Money at Interest, being very willing it sho’d be disposed of as shall be most for the Pits. Advantage so as he may be Indemnified But as to the Profits he insists that they were chargeable with the paym’t of the 1000^. legacy and ought to be applyed accordingly And besides to that part of the Bill which requires the Deft, to Account for the Personal Estate and to deliver the Negro, the Deft, demurs, it appearing by the Pit’s, own Shewing that she hath no right to the same
The most important Question is upon the Pits, right to the Personal Estate which she Claims (upon a mistaken Notion I suppose of her Counsel) upon these Grounds; That by her Fathers Will it was vested in the Son, and that the Rem’r Limitted to the Deft, is void, as being ag’t the Rules of Law, notwithstanding the words of the Will and the Testors. Intent is as clear and strong as possible, That the Deft, shou’d have his p’rsonal Estate upon the Contingency of his Son’s dying & leaving no Male Issue But if this Rem’r of the Personal Estate in the manner it is Limitted must be held to be a good Rem’r by a liberal Construction that all Courts do in these Days make Men’s Wills that they may rather be [194] performed *R86 than totally disappointed or rendered useless in the smallest matter.
There can be no dispute in this Case about the Construction of the words of this Will or what he intended by them But the Rem’r was designed clearly to take place in the Deft, upon two Contingencies, either if the Son died leaving no male Issue at his death or when in any future time the male line of his Family shou’d be Extinct
For the words of the Will, (If my Son dies without such Issue Male) must in this Case be Construed, If he die leaving no Issue at his death, because of the Subsequent words, (or there may be any failure thereafter in the male line)
And indeed dying with’t Issue in Common Parlance and According to Vulgar Acceptation is when a Man has no Issue living at the time of his death, tho’ I admit in the Legal Acceptation when there are no words that shew a contrary Intent, these words are understood of a future time, when the remotest posterity shall happen to die without Issue, But here it is Otherwise, for two distinct Sentences in a Will must not be Construed to signify the same thing for then you render one of them useless, which must not be if it may be avoided
Then the Will must be taken as if it had been thus expressed “ I give my Son my Personal Estate, but if he die leaving no Issue at his Death, I give it then to my Brother, or if he leave Issue male and the Male line fail at anytime, In that Case likewise I leave it to my Brother
Now I agree that if the first Contingency had not happened but the Son had died leaving Issue Male, upon the failure of the male line afterwards, this Rem’r cou’d not take effect, because the Expect’cy wou’d be too remote, and the Law won’t allow the Rem’r of a Chattle to be good unless it may of necessity vest in a few years as upon the Death of one Person or more in being But this will not be a Reason why the Rem’r shou’d not take place when the first Contingency had its Completion upon the Death of the Son, which' might & did happen in a very short time Therefore if any Rem’r can be of a Chattle this must be good I suppose the stale distinction in some of the old Law Books between the Devise of a Chattle with Rem’r and the Devise of the Life of a Chattle with Rem’r will not be revived since it has been Exploded lately upon a Solemn Argum’t between Edmunds and Hughes (Ante)
*R87 But if it shou’d. The Cases which ruled the Judgm’t in that Case must produce the same Opinion in this Nels. 174. 2. Vern. 245. 331. L’d Nott. Rep. 116. which clearly prove that there is no difference between the two Cases
[195] Then it will not be denied that a Rem’r of a Chattel limited upon a Contingency that may happen in a few years is good
Vide the Case of Chichester and Burges (before) So are the Cases Pawlet and Dogget. 2. Vern. 86. and Martin and Long ib. 251. where a Rem’r of a Chattel upon the Contingency of dying before 21. was good But the Case full to our purpose is the Case of Pinbury and Elkin 1. Vern. 758 and 776. Where one Devised his Personal Estate to his Wife Provided if she died with’t Issue, then 80;£. shou’d remain to his Bro’r after her decease The Lord Chancellor Macclesfield was of Opinion, the words (after her decease) determined the meaning of the other words (If she died with’t Issue) to Intend, if she had no Issue living at the time of her death, which if they had stood Single must have been taken in the Legal Acceptation and Decreed the Rem’r good
So here the words (or in Case of failure thereafter) must have the same Effect upon the former words So is the Case of Nichols and Hooper 2. Vern. 686. Then clearly this Remainder of the Personal Estate must be good And so the Deft, has a good right to it, Yet the Case of the Att’o Gen’l on behalf of the Gold Smith’s Company Fitzgib. 314. is full against this Argument
Then as to the Negro that is demanded I cannot see any difference between that and the rest of the Negroes which the Pit. pretends no right to. It is given to the Heir at Law with a Rem’r to the Deft, in Case of an Accid’t that has happened it must be Considered as his Gift and must Consequently be Subject to his Will as well as the rest of his Estate
And as to the Profits the matter insisted on in the Answer I Conceive to be suff’t for with’t doubt the Legacy of a 1000;£. was a Debt upon the Residuary Estate which was given to the Son So that Allowing the Profits to be the Sons Estate and no ways affected by the Fathers Will it shall be applyed to discharge the Son’s Debt, So I think this Legacy is to be Considered Thus far I have Answered the Pit’s, right in point of Law, in these particulars But if I shou’d admit her to be well Intitled in Strictness of Law, and so all regard to the Will and Intent of her Father who has made so handsome a provision for *R88 her must be out of the Question I Conceive we have the clearest Case ,in the World ag’t her and that upon some other very-significant words in the Will
“ In Case’ of my Son’s dying without Issue then I give my s’d “ Estate Real and Personal to my Brother and his Heirs, he or “ they paying my Daughter 2500^. in full Compensation of the “ same.
Now surely these words (in full Compensation for the same are very clear and have no Equivocal meaning, they are Capable of being [196] but in one Sense which is, That if such an Accident shou’d befal the Son the Daughter shou’d have 1000£. Sterl. and 2500^. Current Money and demand nothing more of his Estate, which he declares shou’d pass intire as it was to his Brother, I think in as express words as need to be used for such a Purpose
And there is nothing unkind or unreasonable in this a very ample Portion is provided for the Daughter So as to make her a Suitable match to any Estate in the Colony, on the one Hand & oh the other he has pursued the Wisdom and Policy of the World in Supporting his Name and the Male line of his Family, So that here is a very wise and just Will and it were to be hoped that if the Pit. were of Years of Discretion she wou’d have so much Piety tow’ds her Father’s memory as to desire his Will might take place in its full Extent and not to disappoint any part of it
The Testors. Intention in this Case is so very Apparent that no Question or difficulty can possibly arise concerning it But say they on the other side-the Rules of Law will not Allow a Man to Dispose of his Estate in this manner Therefore he will set aside the Rem’r Yet we will have the 2500^. for a Man may certainly give his Daughter a Legacy if he leaves suff’t to pay it, as the Testor. here has, But surely this is no reasonable way of arguing in a Court of Equity, The Deft, is bound to pay this Sum of Money in Consideration of his having all the Estate both Real & Personal So that he is no more than a Purchasor, tho’ perhaps he has a very good Bargain, And if he is deprived of the Personal Estate how is he Intitled to the 2500£. She must have it upon the Terms of the Will, or not at all, if she has the p’rsonal Estate she must lose the money which I fancy will be no Advantage to her Therefore this Bill is the more Extraordinary on that Account, It seeks to set aside and destroy *R89 the Will in one part and to receive a benefit from it in another, which is unnatural and no ways Consistent with the Rules of Equity. So I think upon the whole matter there can be no doubt but if the Pit. will demand the 2500^. she must Accept it upon the Terms of the Will, The Will is clear that she must give up all pretentions to her Father’s Estate, for the Deft, must have that to enable him to pay the money, And of this Opinion I am persuaded the Court will be upon the Reason of the [197] thing with’t any authority or Precedent, yet I will mention one Case very like this
The Case of Lady Hearne and Frederic Hearne reported 2. Vern. 555. which was thus Sir Joseph Hearne upon his Marriage agreed by Articles That his Wife, over and above one third part of his Personal Estate shou’d if she Survived him have 800.£ by the in money and the furniture of a Chamber and her Jewells And that notwithstanding any thing in the Articles she shou’d not be debarred of any thing S’r Joseph shou’d give her by his Will. S’r Joseph makes his Will and disposed of his Estate and among other Things gave his Wife 1000^. The Lady demanded the 800.£ by the Articles and the 1000;£. But the Lord Chief Justice declared she must either abide by the Articles and renounce the Will, For altho’ the 1000;£. devised by the Will is not mentioned to be in lieu of what is given by the Articles, yet the Will reports a Disposition of the whole Estate and therefore implies a Condition that she must accept what is there given her in satisfaction of her demands And if she shou’d take the benefit of the Will she must suffer the Will to be performed throughout L. p. p. Lord Semors, Laurence and Laurence 2. Vern. 365. and the Case of Ney and Mordaunt 2. Vern. 580. full to the same purpose
Our Case is still stronger than this Because the Testators words are Express that the 2500^. should be paid in lieu and full satisfaction of all his Estate of every kind. But then it may be objected that the Profits accrued after the Testators death and can’t be reckoned as part of his Estate and therefore can’t be claimed by the Deft, by any words in the Will
And this indeed is all that can be claimed with any Colour of Reason in behalf of the Pit. as to these matters in dispute For supposing the Son had lived to be of age and after several years possession had raised a Considerable Sum of money out of the Profits might not he have had a Power over it and disposed *R90 of it as he pleased, Or if he had died Intestate would not the Law have given it to his Sister, and then where is the difference between that Case and this
Indeed I cannot withstand this Objection if that were the Case But my Answer is that there are no profits swallowed up in the payment of the 1000^. Legacy And I must enforce that Argum’t a little farther
Here all the Personal Estate except what was necessary to be preserved in Specie for the Benefit of the Heir and his Estate has been Disposed of, and the Profits were designed by the Ex’ors. & Guardians to Supply the deficiency of the Personal Estate that has been sold and have actually applyed by both Ex’ors. to the raising money for the Legacy in the life time of the Heir which was certainly a publick Application and cannot now be altered upon the event of his dying as being so much actually vested in the Pit.
[198] And besides it is plain that the 2500^. to be paid by the Deft, was intend’d by the Father in lieu and full Satisfaction of everything the Pit. might Claim from his Estate, and these profits do arise from the Estate and cou’d not be designed by the Father to be Accounted for to the Pit. in Case of the Accident of his Sons death If such Intent may be Collected from the Will, then the Pit. must be barred of them by the 2500^. legacy or at least the pr.sonal Estate saved by the Profits remains Subject to the Contingency in the Will Then I understand the next thing to be Insisted on is Interest for the 1000^. and 2500A". there is no pretence to demand Interest for that and there are no words in the Will to charge the residuary Estate with the paym’t of Interest for the 1000^. before it was raised But as the Ex’ors. are Ordered to place it at Interest it is implied that the money must be raised from the Estate before that cou’d be done, Otherwise they must have paid so much of their own money
Now we Submitted in beginning to the Decree of the Court about placing out both Sums in such of the Government Securities in England as the Court shou’d direct, and this we hope is all that cou’d be reasonably required of us, and the Court made an Order about it Accordingly as to the Nottoway Lands with’t doubt they shall pass with the other Lands by the Will
A Purchase with’t Conveyance is an Equitable Int. and is as well Devisable as Real Estates, the Vendor being a Trustee *R91 for the Purchasor 2. Vern. 680. 1. Cha. Ca. 39. So money agreed to be laid out in Lands shall pass as Land. 1. Vern. 471.
But if it were Otherwise the Legal Estate by Conveyance is vested in the Deft. Subject to a Trust which is now gone and to set aside this Conveyance and create a new Trust cannot be by the Rules of Equity as this is Circumstanced, Because by the Compleating this Purchase the personal Estate which is now vested clearly in the Deft, is now lessened and therefore he ought to have the Benefit of the Purchase As where a Guardian of an Infant having a Consid’ble Sum of Money in his Hands raised out of the Infants Estate lays it out in a Purchase for the Infant. The Infant dies under age, this Land shall not go to the Infants heir, but shall be looked upon as a Personal Estate, because the Personal Estate was lessened by the Purchase And it is a Maxim in Equity that he shall have Satisfaction which sustains the loss Vern. 403. 435. Cha. Cases. 377.
So upon the whole matter I conceive that the Tes’tors Will must [199] be performed throughout, Otherwise the Pit. will have no right to the 2500£. The Tes’tors. Will is clear that the Deft, shou’d have all his Real & Pr’sonal Estate which Includes every thing a Man can dispose of, no Question can remain but about the Profits He might have disposed of them by proper words and they are charged we hope with the 1000.£. if not, the 2500;£. must be Construed a Composition for them, as well as every thing else
Then all the adversary part of the Pits. Bill must be dismisst and what relates to the paying and placeing out the Money at Interest we cou’d do nothing in it safely with’t the Decree of this Court and to the Thousand pound Legacy the Deft, is only a Trustee And as a Trustee he shall not be Answerable for Interest, Unless he had been supinely Negligent or guilty of a wilful default in placeing it out at Interest Vern. 144. And as to the 2500^". there cou’d be no payment to the Pit. being an Infant. The Court has taken the matter upon them and made an Order in it
So upon the whole it is Submitted
Cases cited against us. Whitmore’s Case Pollexf. 37. of several Limitations of a Personal thing and only one of them good. Obj. That the Negro Bob was not in the same Circumstances as the other Estate
But the whole Court were of Opinion with the Deft.